**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESUS HERRERA SANCHEZ,** *Petitioner,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-cv-7938** |
| **J.L. JAMISON, Warden, Federal Detention Center, Philadelphia, *et al.*,** *Respondents.* | : | |

# MEMORANDUM

**KENNEY, J.** **OCTOBER 27, 2026**

Before the Court is Petitioner Jesus Herrera Sanchez's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention pursuant to 28 U.S.C. § 2241. *See* ECF No. 1 ¶ 14. Respondents oppose any relief. *See* ECF No. 6. For the reasons set forth below, the Court will **DENY** the Petition (ECF No. 1) because Petitioner has failed to exhaust his administrative remedies.

## I. BACKGROUND

Petitioner is a twenty-nine-year-old citizen of Mexico who "entered the United States at Nogales, Arizona on or about March 25, 2023." ECF No. 1 ¶¶ 1, 17.[1] Shortly after crossing the border, he was encountered by officers from the U.S. Department of Homeland Security ("DHS"). *See id.* ¶ 18. DHS officers "detained and processed [him], initiated removal proceedings, and released him." *Id.*; *see also* ECF No. 6-1 at 3 (noting that Petitioner was previously "processed as a Notice to Appear"). He has been residing in Kennett Square, Pennsylvania with his wife and

[1] In his Petition, Petitioner mistakenly states at one point that he entered the United States on March 25, 2025. *See* ECF No. 1 ¶ 1. Elsewhere in his Petition, he claims that he entered the United States on March 25, 2023. *See id.* ¶ 17; *see also id.* ¶ 1 (noting that he "was released from immigration detention in 2023"). The Form I-213 also notes that Petitioner was encountered on April 25, 2023. *See* ECF No. 6-1 at 3. The record thus reflects that Petitioner entered in 2023, not 2025.

seven-year-old daughter and has been working "as a horse farm hand." ECF No. 1 ¶ 19. Petitioner previously submitted an asylum application, which is still being processed. *See id.* ¶ 20. In addition, Petitioner has "complied with all the conditions of his removal proceedings and immigration release[,]" including attending his regularly scheduled check-ins with U.S. Immigration and Customs Enforcement ("ICE"). *Id.* He does not have any criminal history. *See* ECF No. 6 at 1 n.1.

On or about October 14, 2026, Petitioner was attending a scheduled check-in with ICE officers at ICE's Philadelphia Field Office. *See* ECF No. 1 ¶ 21. During his check-in, ICE officers served Petitioner with a Form I-200 Warrant before arresting and detaining him pursuant to 8 U.S.C. § 1226(a). *See id.*; *see also* ECF No. 6 at 1 n.1, 5; ECF No. 6-2 at 2. Officers also provided Petitioner with a Notice of Custody Determination, through which he requested that an immigration judge review his custody determination. *See* ECF No. 6-4 at 2.

The Petition followed. In connection with his re-detention, Petitioner asserts claims for: (1) a violation of his rights under the Due Process Clause of the Fifth Amendment; and (2) a violation of the *Accardi* doctrine. *See* ECF No. 1 ¶¶ 59–81. Respondents filed an Opposition to the Petition for Writ of Habeas Corpus (the "Opposition") on October 23, 2026. *See* ECF No. 6.[2]

The Petition is before the Court.

[2] Respondents attached a Declaration from Deportation Officer Shelby Richardson to their Opposition. *See* ECF No. 6-3 at 2–3. The Court gives little weight to this Declaration because it appears to be inconsistent with the documentary record. Officer Richardson states that "Petitioner's immigration case began with the issuance and filing of a Notice to Appear ('NTA') on or about March 27, 2023[.]" *Id.* ¶ 3. However, Officer Richardson also states that Petitioner was encountered on April 25, 2023. *See id.* ¶ 2; *see also* ECF No. 6-1 at 3 (noting that the Notice to Appear was issued after Petitioner was encountered on April 25, 2023). Immigration proceedings could not have been initiated against Petitioner before he was ever encountered.

## II. LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III. DISCUSSION

Before seeking judicial relief, habeas petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." (collecting cases)). As articulated by the Third Circuit, the exhaustion doctrine serves several important purposes: it

> (1) promotes administrative efficiency by 'preventing premature interference with the agency processes[;]' (2) respects executive autonomy by allowing an agency the 'opportunity to correct its own errors[;]' (3) facilitates judicial review by affording courts the benefit of the agency's experience and expertise[;] and (4) serves

> judicial economy by having the agency or other tribunal . . . , compile a factual record.

*Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980) (citation omitted). However, exhaustion can be excused in certain circumstances where (1) exhaustion "would be futile[;]" (2) "the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]" or (3) "if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

Here, Petitioner is being detained under 8 U.S.C. § 1226(a), which provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States[,]" provided that the noncitizen is not subject to mandatory detention under 8 U.S.C. § 1226(c). *See* 8 U.S.C. § 1226(a). Section 1226(a)'s implementing regulations expressly permit immigration officials to revoke a prior release and return a noncitizen to custody. *See* 8 C.F.R. § 236.1(c)(9). A noncitizen detained under Section 1226(a) is permitted to request a bond redetermination hearing before an immigration judge. *See id.* § 236.1(d)(1); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))); *De Sousa v. Jamison*, No. 26-cv-4797, 2026 WL 2097226, at *2 (E.D. Pa. July 21, 2026) (finding that § 1226(a) "unquestionably entitles [the petitioner] to a bond hearing before an immigration judge" (citations omitted)). The noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019). If the immigration judge denies bond, the noncitizen then has the ability to appeal that decision to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 236.1(d)(3).

The Court will deny the Petition because Petitioner has failed to exhaust his administrative remedies. The record before the Court shows that Respondents exercised their discretion under Section 1226(a) to arrest and detain Petitioner. *See* ECF No. 6 at 1 n.1, 6; *see also* ECF No. 6-2 at 2. Petitioner then requested a bond hearing before an immigration judge, which is in the process of being scheduled. *See* ECF No. 6 at 1 n.1; *see also* ECF No. 6-4 at 2. If the immigration judge decides that Petitioner is properly detained, he will have an opportunity to appeal that determination before the BIA. *See* 8 C.F.R. § 236.1(d)(3). Since that administrative process remains ongoing, the "merits of [Petitioner's] claims are not yet ripe for habeas review." *De Sousa*, 2026 WL 2097226, at *2; *see also Madrid Madrid v. McShane*, No. 26-cv-7175, 2026 WL 3182012, at *2–3 (E.D. Pa. Oct. 23, 2026) (denying a habeas petition for failure to exhaust and finding that the petitioner's claims were "not yet ripe"); *Beradze v. Jamison*, No. 26-cv-7111, 2026 WL 2859721, at *1–2 (E.D. Pa. Sept. 23, 2026) (denying a habeas petition for failure to exhaust and finding that the *Mathews* factors weigh in favor of exhaustion); *Kumar v. Warden*, No. 26-cv-6689, 2026 WL 2836549, at *2 (E.D. Pa. Sept. 21, 2026) (denying a habeas petition for failure to exhaust); *Torres-Duran v. Blanche*, No. 26-cv-3586, 2026 WL 1878605, at *2–4 (E.D. Pa. June 30, 2026) (denying a habeas petition where a petitioner was detained under § 1226(a) and failed to first request a bond hearing before seeking judicial relief); *I.K. v. Jamison*, No. 26-cv-3719 (E.D. Pa. June 9, 2026), ECF No. 10 (denying a habeas petition where the petitioner was detained pursuant to § 1226(a) and was scheduled to receive a bond hearing the next day); *Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *2 (E.D. Pa. May 14, 2026) ("Petitioner must exhaust the administrative remedies provided by § 1226(a) before seeking habeas relief from this Court.").[3]

[3] The Court is aware that other judges in this District have found that administrative exhaustion is not required under similar circumstances. *See, e.g.*, ECF No. 6 at 3 n.3. Although these decisions are persuasive authority, they are not binding on this Court.

Petitioner argues that the Court should nonetheless excuse administrative exhaustion for several reasons, none of which are persuasive. First, Petitioner argues that exhaustion would be futile because he is "challeng[ing] the 'legality of the initial deprivation of liberty.'" ECF No. 1 ¶ 25 (citation omitted). According to Petitioner, "Respondents failed to conduct an initial custody determination, . . . so there is no administrative remedy available to him" because "a bond hearing before an immigration judge is only available *after* DHS has made an initial custody determination." *Id.* ¶¶ 25–26. But Petitioner points to no provision of either 8 U.S.C. § 1226(a) or its implementing regulations that require more process than what Respondents have employed here. Moreover, Respondents have not taken the position that a bond hearing is unavailable to Petitioner. Rather, Respondents have provided Petitioner with a Notice of Custody Determination, through which he requested review by an immigration judge, and a bond hearing is being scheduled for him. *See* ECF No. 6 at 1 n.1; *see also* ECF No. 6-4 at 2. At that bond hearing, (1) Petitioner will be "entitled to factfinding based on a record produced before the decisionmaker and disclosed to [Petitioner];" (2) Petitioner will be allowed to present evidence and "make arguments on his . . . behalf;" and (3) the immigration judge must make "an individualized determination of [Petitioner's] interests." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (internal quotations and citation omitted). Accordingly, Petitioner will receive the individualized assessment that he seeks at the bond hearing.

Second, Petitioner argues that exhaustion would be futile because appeals to the BIA "for detained noncitizens take 195 days on average to complete." ECF No. 1 ¶ 28. The fact that review is not instantaneous does not necessarily support a finding of futility. The Supreme Court has found that noncitizens can generally be detained for a presumptively reasonable period of six months, and "may be held in confinement until it has been determined that there is no significant

likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *see also Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Moreover, if the immigration judge determines that Petitioner does not need to be detained and can be released, then an appeal to the BIA may be entirely unnecessary. Furthermore, "the administrative procedure that remains available to [Petitioner]" has not been shown to be "inadequate to prevent irreparable injury." *Madrid Madrid*, 2026 WL 3182012, at *2. As the *Madrid Madrid* Court noted, this Court does not have any "greater power to undo [Petitioner's] time in custody than the agency does, and the pending redetermination hearing can provide the same relief" that he seeks. *Id.*

Third, Petitioner argues that exhaustion would be futile because he has brought "serious constitutional claims, which immigration courts have no authority to hear[,]" and further contends that "[i]t is a clear violation of procedural due process to detain someone without performing an individualized pre-deprivation determination of their risk of flight and danger to the community." ECF No. 1 ¶¶ 29–30. But Petitioner puts the cart before the horse because, as discussed above, the merits of the Petition are not yet ripe for review in the absence of administrative exhaustion of his claims. As noted, Petitioner is entitled to a bond hearing, during which he will be provided with the individualized assessment of flight risk and danger that he seeks. *See Beradze*, 2026 WL 2859721, at *1 ("A bond hearing will provide [p]etitioner with precisely the sort of individualized assessment that he seeks."). Therefore, "the solution is for Petitioner to exhaust his administrative remedies" because it is not clear to this Court that there has been a constitutional violation here. *Id.*; *see also Bennett Baloy v. Warden*, No. 26-cv-7398 (E.D. Pa. Oct. 9, 2026), ECF No. 12 ¶ 10 n.6 (noting that upon balancing the *Mathews* factors, "there are competing considerations, which make it far from unambiguous that there has been a constitutional violation here" and that, "[t]o

the extent there may have been a constitutional violation, any such determination is better left for an administrative tribunal to consider prior to any action from this Court"); *Beradze*, 2026 WL 2859721, at *2 (finding that "balancing the *Mathews* factors supports the conclusion that [p]etitioner's due process rights can be adequately protected through exhaustion of his administrative remedies"). In any event, requiring exhaustion is "particularly important in the resolution of cases involving constitutional issues[,]" as here. *Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982) ("If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication.").

Finally, Petitioner argues that exhaustion should be excused because "ICE has chosen to detain [Petitioner] at FDC-Philadelphia, a facility that does not actually permit detainees to appear for bond hearings." ECF No. 1 ¶ 31. While ICE initially detained Petitioner at the FDC for processing, ICE intends to transfer him to Moshannon Valley Processing Center, a facility that has the capability to facilitate virtual bond hearings. *See* ECF No. 6-1 at 5. Indeed, Respondents would have already transferred Petitioner there if not for this Court's Order barring transfer pending the Court's decision on the Petition. *See* ECF No. 2. Accordingly, Petitioner will not be inhibited from having a bond hearing simply by virtue of his initial detention at the FDC, so this argument, too, does not warrant excusing exhaustion in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Petition (ECF No. 1) because Petitioner has not exhausted his administrative remedies. Respondents shall proceed with scheduling a bond hearing for Petitioner. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**